Ozturk v. Hyde Good afternoon, your honors. Tyler Becker, Counsel to the Assistant Attorney General for the Civil Division of the U.S. Department of Justice, on behalf of all appellants. May it please the Court. We are here today on the District Court's order transferring Ozturk to ICE custody in Vermont and denying the government's motion to dismiss for lack of habeas jurisdiction. The District Court's order should be vacated with instructions to dismiss the case for lack of habeas jurisdiction. First, when Ozturk filed her amended habeas petition, petition at issue today, she was not in Vermont, she was in Louisiana, and she did not name her immediate custodian. And even if her initial petition is the proper filing to consider for habeas jurisdiction, she filed in the wrong district, Massachusetts, and still failed to name a proper custodian. Could I ask you at the start, this is an appeal from an order that required the government to transfer Ozturk from Louisiana back to Vermont. Yes, your honor. She has now been transferred. Why, could you just address at the start why your adversary is not right in arguing that this appeal is now moot? Your honor, the government does not believe this appeal is moot because mootness only occurs if a court cannot provide effective relief. And at this point, if the court was able to reverse this order, number one, the order itself included a dismissal of our arguments on lack of habeas jurisdiction. And the second reason that it's not moot is that we would be able to, we would effectively, she's still in custody technically, or still effectively in custody at this point, because she still has certain conditions and the government has certain conditions on it. So even though she has that relief. Are those conditions include that she has to stay in Vermont? No, they are New England, generally. She has to stay in New England? She can get, she has to notify if she's going outside. She has to notify. Yes, correct. And she's not in custody. And the government would be prohibited from moving her to some other place, right? That's correct, your honor, without giving the district court a 48-hour notice and an opportunity for her counsel to respond. So there are restrictions on the government from which you want relief? Yes, your honor. But then, you know, it is also, as you pointed out, like it was the same order by which the district of Vermont accepted the transfer of the position from Massachusetts, and so they made a determination about whether the position could have been brought there. And so, you know, reversing that order just decides whether it was appropriate for the district court to entertain the habeas position in the first place. Yes, your honor, that is the government's position, that everything that happened afterwards is really dependent on this order here that transferred Auster to Vermont. Can you just clarify for me? I guess I would like some clarity on what exactly has been appealed. Number one, I guess I would ask, you didn't appeal from the release order, right? That's correct, your honor. Is there a reason why that's evident on the record? I don't want to probe anyone's brain, but I'm just, am I missing something? Well, we did not think we needed to, because at that point the district court had transferred Auster, that that was the order we appealed from, and we, that's when the district court said it had habeas jurisdiction at that point. I would love to sort out what is the scope of the appeal, because there was no second appeal from the release order. So, maybe just going back here, why is it not, analytically separate, the question of whether you're appealing the transfer of the petitioner as opposed to this acceptance of the 1631? And do we need to independently determine whether we have jurisdiction over both of those, if both of those are being appealed? Well, your honor, I think if you, I think that you have jurisdiction over, frankly, both of them, and as a result, both of them rely on the court actually saying that it has habeas jurisdiction. Why is that true? Well, ultimately the court would have just dismissed if that was not the case. So, there would have been no reason for the district court to move Auster to Vermont, which was the entire reason for doing so was so that she could be there to better, and be closer to her attorneys, and better able to deal with the habeas proceedings that were going on there, rather than being in Louisiana. But it sounds like you're just trying to mush everything together. Analytically, we have to find out what is the order being appealed from, and do we have jurisdiction to cover it? And not just, is there some predicate ruling that would be buried in there somewhere over which we would have jurisdiction? The question is, I thought the transfer order is not the 1631 transfer. I thought it was the transfer of custody of this person from Louisiana to Vermont. That's correct. Am I missing something? That's correct, Your Honor. The order being appealed from is the transfer of Auster from Louisiana to Vermont. That is the order that is being appealed from. And so, that transfer has now taken place, and she's been released on bail, and you didn't appeal the bail determination. So, in your reply brief, you say that the relief you would get from our opinion is that if she were to violate a condition of release, you could then seek to have her sent to Louisiana. But that seems to require the assumption that she's going to violate her conditions of release. So, it seems to be almost admitting that the immediate order, the immediate reversal of the transfer order wouldn't really accomplish anything for you. Well, Your Honor, we think that it actually would, that it would accomplish something for us. And in addition to the concern, in addition to the issue of if she violated her conditions, there's also conditions on the government in the same order. It's docket number 141. There's also a condition on the government. I mean, we aren't able to re-detain her at all without giving the district court notice, without making sure the district court, without giving a plaintiff an offer. I took your argument to mean that the district court could not have issued the transfer order without jurisdiction over the Hayden's petition. And therefore, determination that an act entitled to this jurisdiction would require the refusal of the petition overall. And then you say, well, even if you were to focus narrowly on the transfer itself, it still wouldn't make a difference. Yes, Your Honor. A lot of this is because this happened so quickly in the district court. There were a lot of things merged together in the order that is being appealed. It technically is the transfer order, and we think that transfer orders are, frankly, appealable. And I'm talking about the transfer of her from Louisiana to Vermont for many reasons under the Supreme Court's Twyford decision, as well as just as an injunction. But the district court, in the same order, said, because I have jurisdiction over the Hayden's claim, that's why I'm transferring her, right? That's correct, Your Honor. The entire purpose of... There were a lot of questions about whether there's jurisdiction over the petition. Yeah, I think that's correct, Your Honor. The government believes that this entire case centers on, there would not have been a transfer order if it was not for ruling on whether the court had habeas jurisdiction or not. And the court specifically, in the order, denied the government's motion to dismiss on that, which itself would not be an appealable order, but I think it's just all dependent on that. So you're arguing that mootness does not arise if there's sort of a bubbling substrate of an issue that will still have some effect in the rest of the case, but could not have an effect on the physical transfer order? Well, Your Honor... It seems to me that those are two analytically distinct issues, and I think that's your argument. There's two arguments here. One is you're saying that the physical transfer order is still somehow alive. I'm not sure I understand that. But then there's another one that says because all of this, even if moot, is based on a jurisdictional dispute, if you win that jurisdictional dispute, that keeps it alive? Yes, Your Honor, we do think that keeps it alive, because there would be some effective relief. There's not no effective relief here. So tell me again, in the one short declarative sentence, what is the effective relief that we can give you? Against the transfer order. Not against the release, because you never appealed that. The effective relief that the court can give is dismissing the case, or is ordering, vacating the transfer order, and instructing the district court to dismiss the case for lack of a justification. I mean, if a court granted relief to your opponent, and the case became moot, let's take it out of the immigration, you couldn't come in here and say, well, vacating the order itself, just the very fact of the vacator is the relief that is effective. You would have to point to some consequence that would give you effective relief, right? Because obviously, there's always the order that went and became moot. Tell me what is the effective, what's the thing that happens for the government that's helpful, other than just knowing, in some deep and satisfying way, that you were always right about the transfer order? Well, your honor, number one, we think that we could potentially re-detain Oz Turk. She could be brought to... How, and that's helpful, but why? Why is her physical custody in Louisiana, as opposed to Vermont, going to somehow enable you, the government, to re-detain her? I thought it was only the release order being undone. And let me ask you this, I guess another way to put it is, had the court not transferred her physical custody, the court still could have done the release order, right? The court technically, yes, could have done the release order. Again, assuming the court had still ruled against you about being in this jurisdiction and all that. Correct, yes. And that's what I guess is trying to isolate the variable of the physical transfer of custody. Why is that getting reversed, have any impact on, why is that still a live issue? Well, your honor, at this point, because there's still these conditions on the government and on Oz Turk, getting rid of the transfer order would, she would not, you would be saying that there was no habeas jurisdiction. I mean, that's the argument. The release order, what we're calling the release order, is really an order of release pending the adjudication of the habeas petition, right? That's correct, your honor. So if, in fact, there was no jurisdiction over the habeas petition, it needs to be dismissed. The release pending the habeas petition doesn't really matter, right? Yeah, that's correct, your honor. If you appealed the release order, it would mean you're saying, well, she shouldn't have done the release pending the adjudication of the habeas petition, but that would be not really the central question about whether the district court should have proceeded to adjudicate the habeas claims. Yes, your honor, we think that the order... Your position is that the transfer order is the mechanism by which the district court decided to adjudicate the habeas claims, and you think that was wrong, right? Yes, your honor, and the district court itself was saying, I think, at the end of the opinion, the district court was saying that it was doing a number of things. Number one, it was transferring Ozturk to the physical transfer, not the transfer of petition, and it was also saying that it was accepting the petition from Massachusetts, and it was declaring that it had habeas jurisdiction. So all of those things are in the order that was appealed. Right, and you appealed that determination, and so you're saying if, in fact, you say that that order was erroneous, it would require us to say that the habeas petition needs to be dismissed. Yes, your honor, we think that it would... You did not say that, and all we did was transfer the physical transfer order. It would have the implication that the government would no longer be required to keep her in Winston. That's correct, your honor, and would not, we think, be required to notify the court every time we were going to re-detain her, we think, if it was the... if we reversed the transfer order. I thought that was the release order that keeps you from detaining her. You're saying it's the transfer order that keeps you from detaining her? Well, the transfer order brought her to Vermont and has kept her in a sort of habeas-like custody because... I don't know what habeas-like custody means. Well, I mean, she's released, but, I mean, you could say she's in habeas custody now because... But she's not in Louisiana. That's correct, she is not in Louisiana. And she's not in... okay, I guess I'm still not following, but... Your honor, if you do get to the merits in this case, I wanted to talk a little bit about those. First, Allstark filed her amended habeas petition. As we said, she didn't say... she didn't include her in media custodian. There's a number of reasons there was not habeas jurisdiction here. And then I want to move on to the other statutory arguments. So, 8 U.S.C. 1252G, it strips federal district courts to hear any claim arising from a decision or action to commence removal proceedings against an alien. And Allstark's own petition is making clear that she is challenging the decision to arrest, detain, and remove her. And, regardless, her detention is inextricably intertwined with that decision to commence removal proceedings. So, just no jurisdiction exists under this court's cases, like Ruiz and Delgado. So, you're saying that because the reasons for the detention are the reasons for... or she's challenging detention on the basis of the reasons for the removal, that's why there's no jurisdiction, right? That's right. She's... the decision to... As a principle, someone could file a habeas petition if there really were challenges to detention that's independent of the removal, right? There may be. So, for example, this court has allowed petitioners who have conditions of confinement claims, for example, if they were detained for too long, I think, to be able to file a claim like that. It's kind of like a Zabudowsky claim that actually there is a detention pending removal. It's an indefinite detention. Yeah, it's a little different than Zabudowsky. There's no reasonable foreseeability of the removal. You could file a challenge to detention on that basis, right? Yes, you could file a... in this circuit, that's the law. You can file a law. Well, it's not just our circuit, right? So, like, in the briefs, there's this Bella Reyes case where the alien was detained... was released pending their removal proceedings and then engaged in a protest and then was put in detention after that, right? So that's like a person who had claimed that his detention was in retaliation for speech. That was not the ground on which he was being removed, right? So you could have a... you could have a habeas petition over that, right? Your Honor, it's conceivable that you could have a habeas petition for something like that. But the issue here is that... is that under the statute, under 8 U.S.C. 1252G, it's just any decision that's related to commencing proceedings is something that you cannot challenge. And the issue here is that everything happened at once. So we... the government decided to commence proceedings and also decided, as it always has to do when it commences removal proceedings, the government always has to decide whether to detain someone because they have discretion to do so. So they have to make a decision of yes or no. We need to detain them. And under 1226A, they have the ability to detain... I'm just sort of testing the boundaries of the argument, right? So, like, we have this case from the Third Circuit about if somebody is denied kosher food or something, they can file a habeas petition. That would not implicate the removal, right? Those are conditions of confinement claims. Those are. There's one thing. Yes. You couldn't challenge conditions of confinement or some aspect of the detention that's a part of the removal proceedings. The problem here is it's effectively a challenge to the reasons for the removal. Yes, Your Honor. And we think that under cases like the Supreme Court's decision in AADC, as well as just the principles behind the immigration statute that Congress had passed, it was to really remove federal district court jurisdiction from a lot of these challenges to actually the substance of what's going on in a removal proceeding. And here, there's no way to separate out the substance. It's intricately intertwined between what her claim is as to... And she even, in her petition, she's both challenging her removal or doing a challenge to her removal and her detention in the same sentence in her... Can I ask you, maybe this is a follow-up on Judge Menasche's question. I struggled when I was reading her brief to just understand if you're making one or possibly two parallel arguments. The one I think you're making is, in this particular case, the particular allegations this petitioner has brought to challenge the removal and to challenge the detention are identical. That it's attacking this one decision, this one unified decision that spawned two things. But at other times, particularly when you're undergoing your statutory analysis of things like 1252G, I thought the government was making a broader argument that whenever detention decisions are made contemporaneously with removal decisions, they are also beyond judicial review. So it's the contemporaneity of them and not necessarily the unity of the basis for challenging them. And I think this kind of goes back to the hypothetical situation where the government has one motive, one alleged motive for seeking someone's removal, and then a completely different motive to detain them. And you can illustrate them well when the idea is, well, the removal happens on day one, the person speaks out saying, I hate the government, I can't believe they did this, and then on day ten they're detained in some presumptive retaliation against their First Amendment rights. So I guess I'm just wondering, are you making the argument that whenever the detention is contemporaneous with the removal decision, it's beyond judicial review? Or are you making a case-specific argument that here the claim is effectively unitary? The government is making both arguments, and sorry, Your Honor, if that was not there for our briefs. No, it's helpful to know what you're arguing. We're making both arguments, and the reason for this is that we think that given the discretion that the government has whether to detain someone pending a removal proceeding, given that the government always has to decide whether to detain the person or not, because they do have that authority under 1246, it's May, that if you do it at the same time, if you both detain and decide to remove someone at the same time, it's going to be- Right, so if the government decides to commence removal proceedings, and so it says, okay, we're going to arrest the alien and detain the person and put the person into removal proceedings, then that's all the decision to commence removal proceedings. And then, you know, the other, you know, B-9 says any action taken to remove, and, you know, when you detain somebody, it is in service of the removal because it makes it more likely that their removal will be effectuated. But you're not saying that if you made a separate decision about the conditions of confinement at the beginning, like you said, I'm going to remove the person because the student visa has been revoked, and put the person into detention, and then also, by the way, deny them food in their detention or something. Like, they would be able to file a Habeas Claim to challenge the denial of food, right? Your Honor, they can file a Habeas Claim related to conditions of confinement. Right. But the contemporaneousness is not the dispositive thing. It's about whether it is an action taken to remove or whether it's part of the decision to commence proceedings, right? Your Honor, we do think that it is a little broader than just being the contemporaneousness. It's just that because of the way the statute operates in terms of creating these restrictions on judicial review, it's just that functionally, number one, it's always going to be, if you're detaining somebody right at the same time that you're commencing proceedings, there's going to be a 1252G problem. And then, as you mentioned, B-9 as well as A-5 make clear that all questions of law and fact related to removal proceedings are supposed to be sort of appealed. Right, but the thing is that it's not an action taken to remove. It's like I said, it's a separate thing. So it wouldn't be excluded by virtue of that provision. That's a different, yes, that's a different issue. Could you walk us through, I'm thinking about B-9 and its channeling. I mean, this is an unusual case. I mean, most of the cases that we, for many reasons, but one of them is that most of the cases that come our way, the person is unlawfully in the country at the time the commencement of removal proceedings began. Here, the revocation of the visa is what causes the person to be unlawfully in the country. And they're making a strong argument that it was their retaliation for the exercise of their First Amendment rights. You're saying that the channeling provision gives them an adequate, gives the petitioner an adequate opportunity to test that claim. Can you walk us through how that petition for review process is going to work? Yes, Your Honor. So at the outset, I will say that as to detention, the petitioner, including Oz Turk here, she can raise a bail claim based on these First Amendment issues inside, and she can appeal that to the BIA from an immigration judge. She was denied bail by an immigration judge and actually didn't appeal to the BIA. Instead, she went to federal district court. Actually, so I want to ask about administrative remedies in a second, but why don't we answer Judge Livingston's question, but I'm just going to flag that as something which I wanted to follow up. And then, Judge Livingston, I wanted to address the rest of your question. So in the petition for review process, she'll go through, Oz Turk will have the opportunity to go before an immigration judge. She has immigration judge proceedings that are going on in Massachusetts currently. She'll be able to, now, I know there's some disagreement in the record about whether an immigration judge can consider constitutional questions. It has been made very clear in a recent memo that we cite in our reply brief that EOIR says that they can consider constitutional questions in these proceedings, and they can also always make a record of them. So that can happen at the immigration judge basis. Then they can go to the BIA. If she doesn't win in front of an immigration judge, she has the ability to appeal to the BIA, and then she would have the ability to appeal to an appropriate court of appeals. I was just going to ask about the administrative remedies. So is there a separate problem about exhaustion of administrative remedies? You both have said that when you're doing a BIA, some of the proceedings seem to take advantage of administrative remedies. So in this case, right, Oz Turk had a bond hearing, was not a bond, but was able to appeal to the BIA. Is that a problem? Your Honor, we think that is a problem and potentially is an exhaustion problem, but I think it gets more at how there is a proceeding for her to go through to get relief and that creating federal district court jurisdiction here is just going to really open up many of these decisions. It's not necessary, but even if we were to allow it, like I said, we need to exhaust. Whenever Congress has laid out an elaborate administrative scheme, we need to exhaust those remedies. Yes, Your Honor. We think that the BIA and the Executive Office of Immigration Review have created this system for people to be able to raise claims inside that system. So there is this idea, as you mentioned, about whether the immigration adjudicators can consider constitutional questions. I mean, I guess as an initial matter, even if they can't, sometimes we say you can get the same relief on a different grant that's going to exhaust. Yes, Your Honor. Also under LGM, you can always, like they can raise it in a court of... The fact that you might not be able to raise something in an administrative agency, a constitutional issue, doesn't really mean that there's not an adequate review. Yes, we've said in prior cases that immigration adjudicators don't have jurisdiction to consider constitutional questions, but I don't really understand that idea. So first of all, we know from scenes of Arlington that administrative agencies don't really have a jurisdiction. So that's just kind of like the concept of it is when they have the power to decide that, right? Well, Your Honor, our... Let me finish. And then you mentioned the memo that you cite, which cites a whole bunch of BIA cases that consider constitutional questions, right? Immigration adjudicators consider due process all the time and amplify challenges under the Fourth Amendment or the First Amendment and whatnot. So I think that there's a practice among the IJs and the BIA that they're not going to consider challenges to their own authority, but they themselves are unconstitutional. Yes, Your Honor, and we've said that their removal protections are unconstitutional. And there is some BIA case law that says they're not going to consider the facial infallibility of a statute, although I guess you are not sure whether that's valid or not, but there is some case law that says that, right? There is, Your Honor, but we think based on many of the precedents they've got that exist at the BIA, they actually have in terms of considering... A lot of times it's on constitutional avoidance grounds because immigration is a statutory matter and they're trying to... But regardless, I mean, in this case, we're not really talking about the facial infallibility of a statute, right? It's not as if Oster is saying it's unconstitutional to revoke anybody's, she's saying the grounds for this revocation was unconstitutional, right? So that's an answer to the last question. That's correct, Your Honor. I will just note one thing, that in this proceeding, she's actually not challenged her particular visa revocation, although she may be challenging that at the foreclose. Well, can I just add to your point, Lang, because it's not clear to me, and I think you're pointing to page 31 of your reply brief. Is that what we're talking about? Yes, Your Honor. In the government's view, would an immigration judge be empowered to release her from administrative detention by concluding that she is correct, that her detention was motivated by retaliation and violation of the person's visa? I think I framed it as a clear yes or no question, but you can tell me if I have not. I'm just grabbing the brief, Your Honor. I'm looking at page 31, where you say, well, some constitutional claims can be considered and others can't. Maybe you can always lay a record, but I didn't see anything that clearly said that the claim she is raising now, which is her detention violates the First Amendment. Can an I.J. say you're right and release her based on that conclusion? Your Honor, the government is not saying that an I.J. can't do that. We think they can. Are you saying they can? Yes, Your Honor. The I.J. has the discretion in bond hearings to consider. Discretion or would be bound to? Discretion suggests you can decide to think about it, you can decide not to think about it. I guess if you came to a judge in a habeas claim and assumed that the court had habeas jurisdiction, and you say, my First Amendment rights are being violated, the court would have to adjudicate them, right, and assume that if the person's correct, there's a First Amendment problem, they have to release her. I'm asking, is that the same for the I.J. or not? Well, Your Honor, given that the I.J. is bound by the requirements, the President's Take Care Clause and everything like that, I think the I.J. could certainly, I mean, should certainly consider. I'm not asking could or should. I just need a straight answer to this. Is the I.J. obliged to consider a First Amendment claim, and if the I.J. finds the First Amendment claim to be valid, must the I.J. grant release? The release is discretionary in this, so I think no. I just want to finish this line. So your view, the answer is no. Even if the I.J. finds a First Amendment violation, the I.J. would not need to release the person? Is that what your answer is? Your Honor, given that the release is discretionary, I don't want to take a position here. Don't take a position.  Well, so ACFR 1003.190 says, consideration by the immigration judge of an application or request of a respondent regarding custody or bond under this section shouldn't separate and depart from until a formal part of a deportation or removal hearing or proceeding. The determination of the immigration judge as to custody or status or bond may be based upon any information that is available to the immigration judge that is presented to him or her by the alien or the service. And it seems like in the CIA case law that says that one of the things the immigration judge considers is the likelihood that the release from removal will be granted when determining whether they come in Lawrence bond, right? So certainly, an issue in the bond hearing will be whether the government is going to ultimately proceed in saying that she is removable, right? And that is going to involve her as applied to First Amendment claims if the removal violates the First Amendment. Of course, Your Honor. And that's what the government would say that IJ can certainly consider this issue. That's really not something we dispute. Are there further questions? I have one. Double B-9 question about certain now or never, the now or never argument of the Third Circuit. Could you just address how that fits or doesn't fit in your view here? I think I get these sections, all these 1252 sections, confused. I think we're talking about B-9. You tell me if that's coming up in the context one or the other. Your Honor, could you just repeat what the argument is? Well, the Third Circuit, I always remember the name of these cases. It's E-O-H-C. This is Judge Peters' argument about how you read some of these other cases to say that things are sucked into the zipper clause, if you will, partly based on your analysis of whether it's a now or never claim, that either it's going to be considered. If it's not adjudicated now, it's never effectively going to be reviewed. But if it is something that can be effectively reviewed at the end of the day through the petition for review process, then it is sort of hoovered up into the zipper clause. How does that apply? How does that play out in this case in your view? Your Honor, we think that that plays out in this case because the officer will be able to raise her First Amendment challenge to her removal through her immigration proceedings. And functionally, that's what she's doing in this habeas petition. Because she's challenging both her detention and her being subject to removal proceedings, and that's what she says she's doing, she's challenging the removal proceedings on First Amendment grounds. So that will be able to be adjudicated later through the immigration court process and in a court of appeals, not a district court. I guess I thought the Third Circuit was talking about the relief sought, not the basis for the claim. And I thought the point would be, well, that does her no good if at the end she wins. Hooray. But in the meantime, she hasn't been released here. Or if she were to be returned to custody, well, that could come after a year of detention. To say to her, oh, guess what? You were right. You never should have been detained all along. Sorry about that. But I hope you had a good time for that year. Well, Your Honor, one thing I would just note is if you look at page 33 of our reply brief, she, in her prayer for relief, asks the court to vacate and set aside respondents' unlawful policy of targeting non-citizens for arrest, detention, and removal based on First Amendment perspective speech. So she's asking her. So doesn't that go to saying the two are not dependent and extricately intertwined, whatever? They're not independent of each other. Correct, Your Honor. But what about the problem that the detention itself may be a now or never sort of issue? Your Honor, because the petitioner has the ability to, this is not a case like, I think a good way to contrast this is with Zobby Doss. Because that case involved a situation where petitioners could not raise, or there was no process for them to raise a claim that they had been detained too long pending, they had had final orders of removal, they had not actually been able to, there was just no system for them to say, oh, we've been in detention for too long. Here, there actually is a system because she can go to an immigration judge and appeal to the BIA. There may not be a federal court proceeding involving this, but there is still a process here for her to raise this detention issue. In my survey case, the EOHC case, Judge Hughes writes, consider a detained alien who needs to lower kosher food, or a diabetic who alleges that the government is depriving him of insulin, or take Jen as an example of a challenge to prolonged detention. So I think that what he's describing is conditions of confinement claims, which you said a moment ago, you thought that you still could break a habeas, right? Or a Zobby Doss claim that it's a prolonged detention. Yes, and here it would be different from a Zobby Doss claim because we have other people. I think the reason it's now or never is because when you ultimately adjudicate whether the removal is permissible, you're not going to retroactively give the diabetic insulin. That's what makes it now or never, because it's conditions of confinement that are occurring during detention, right? Yes, Your Honor. And as a type 1 diabetic, I sympathize. And I guess your example of Zobby Doss means that if Ozturk had a claim that the government was unreasonably prolonged detention, but not really acting in good faith to do the removal or something, she'd be able to file a habeas claim, right? Because a challenge to prolonged detention is different than the grounds for removal. Yeah, a challenge to prolonged detention is different from the grounds for removal. And I think in Zobby Doss, where there's a final order of removal, here there's, I think, the Second Circuit precedent is clear that if she was detained for too long, pending removal proceeding, she could bring a challenge. Right, and the problem is, as you said, it's just that the habeas petition here just challenges the removal because it was filed before there were any conditions of confinement. Yeah, that's correct. Yes, Your Honor. Is there any mechanism for a prisoner removal proceeding to expedite those proceedings? Your Honor, I don't know that off the top of my head. What I will say here is that the petitioner here, because she's no longer detained, her removal proceedings are going to take longer because she's on the non-detained docket. So as a result of her being released, it transfers priority within the system because the system is very backlogged. That's just to say that when you're detained, there's an expedited calendar. Correct, yes. Maybe this is a better question for the other side. But it did occur to me to ask, since the filing of all these, what is the current status of the removal proceedings? Has there been any hearing of any sort? Or what's the next step? Where are things? Your Honor, as far as I know, there has not been another hearing in those proceedings. And they're proceeding with briefing and the like. But I think nothing more substantive has happened. Thank you, Your Honor. We're out of here. May it please the Court, Aisha Bhandari from the American Civil Liberties Union Foundation for the affiliated with Lisa Oster, who is a former Fulbright Scholar and current doctoral candidate in child studies and human development at Tufts University and who spent six weeks in detention for writing an op-ed. The First Amendment and the Suspension Clause require judicial review, not administrative executive branch review, but judicial review when liberty and censorship are at stake. Just last year, the Supreme Court in NRA v. Zullo reaffirmed the foundational First Amendment principle that the government cannot use state power, including law enforcement power, as a mechanism to suppress viewpoints in the public sphere. And yet the government is asking this Court to become the first to ever hold that the executive can detain someone to censor and punish her speech and that of others without any access to a habeas court for review. There is simply no precedent for that breathtaking proposition. Now, the government is not only wrong on the merits. This is in search of an advisory opinion from the Court because the appeal is actually moot. I will first address the mootness issue. The government's real complaint here is with Ms. Oster's release on bail. They mentioned the conditions that she's still under, the conditions imposed on the government. Those all stem from the bail order, which superseded the transfer order. Now, I understand... I agree that their complaint is with the legal reasoning that led to the transfer order, but parties do not appeal legal reasoning and appellate courts do not sit in review of legal reasoning. Appellate courts sit in review of orders. Now, of course, the government would appreciate a merits opinion from this panel that would help it in its ongoing litigation, you know, the habeas petition that is ongoing, as would Ms. Oster appreciate a ruling on the merits from this panel that would assist her in her ongoing merits proceedings on the habeas. But the fundamental principle here is that a reversal of the transfer order would have no effect. There is no more transfer order to reverse. I think that what the government is pointing to is that in order to issue the transfer order, yes, the district court had to find that it had jurisdiction and it went through that analysis. And I think the government even conceded that that analysis happens when district courts deny motions to dismiss all the time. Those are not appealable orders for other reasons, not mootness reasons. So again, the government's real issue here is with... ...where she can be held or removed. Well, Ms. Oster has been released on bail and... She just can't be held at all. She cannot be held at all. Now, it's true that there are conditions. She's effectively in the custody of the district court pursuant to the bail conditions. But again, the government could have appealed the bail order. It chose not to do so. So a decision that this is not moot would effectively mean that litigants don't need to appeal the orders that they have actual issues with in any litigation that is not final. So let's say there are preliminary orders on a PI posture or some earlier posture. As long as you still have a dispute with the legal reasoning behind those orders, you wouldn't have to appeal them to get those legal decisions overturned while final litigation is pending. So if I could ask you about the Cohen collateral order doctrine because I think that's the basis, if any, that we have here, right? That's a separate issue from mootness, yeah.  And I guess tying that into mootness, if we had jurisdiction to review a collateral order, let's say a judge does three things in an order. Issue two of three would give rise to the collateral order exception and would fit under Cohen. Can we review if they're safe? Let me put it differently. If there are three forms of relief that a court gives that are independent of each other, one, two, and three, only two gives rise to appealability under Cohen. In your view, do we have jurisdiction to review one and three? Now, that's maybe a different question just to be clear what I'm asking. If one, two, and three all rest on the same premise, it could be, is there a world where we can only review two? If we rule for the appellant on issue two all the way down to the premise, then when it goes back to the district court, we'll have to throw out one and three. But how does it work for Cohen if there are three, and I'm hypothesizing on this case, three independent grants of relief, only one of which satisfies all three conditions of Cohen? Just map that out. I think the court would have appellate jurisdiction only for a properly appealable collateral order under Cohen. Now, it's true that if there is appellate jurisdiction and the court issues a legal ruling that has implication for the other two issues, it will clearly influence the following litigation. But that's always true. Anytime a court has appellate jurisdiction and issues an opinion on the merits, that will influence other pending cases. It will influence ongoing litigation of the same case. But the court must always, under Article III, have appellate jurisdiction. If an issue is moot, if there is not a live dispute with the parties, no matter how helpful the merits ruling might be to those same parties going forward, there simply isn't Article III jurisdiction. And I think the same holds with the collateral order doctrine and interlocutory appeals as well. Why do you think that the bail order supersedes the transfer order? So isn't it that ICE was holding her in Louisiana? ICE ordered to hold her in Vermont. Then she gets bail pending the disposition of the Higgins petition, but the residual authority of the government to hold her is limited to Vermont, right? She gets bail from a particular detention that she filed by the earlier order. Isn't that right? No, I don't believe so, Your Honor. What happened here was the district court ordered Ms. Austert transferred to Vermont. The district court wanted her in the district for her bail proceedings and her ongoing habeas proceedings for access to counsel and also, critically, to remedy the problem that had occurred when the District of Massachusetts order, the spirit of that order, was violated when Ms. Austert was removed from Vermont. So there were multiple reasons that the district court ordered her return. Before the government actually returned her to Vermont, following the state panel opinion from this court that said that the transfer order could be effectuated, the district court held the bail hearing remotely and ordered her release. So she was immediately released from Louisiana. And so I don't think there's any reasonable way to read the transfer order as still in effect. Now, the government argues on reply that, you know, assuming speculatively that she violated the conditions of her release, you know, this issue might become alive again. But that doesn't satisfy the standard that in this court, video services and other cases have said that it has to be more than speculative. If she did violate those conditions, there's no telling what stage of her habeas proceeding she might be at. The district court might not require her presence in Vermont at that point. It might be close to finishing the adjudication. All hearings may have completed. Her removal proceeding may have also advanced. They may have, in fact, terminated on other unrelated grounds. So there's simply no way to say that simply because there are these conditions, in the future, the district court might or might not see fit to order a transfer on the same grounds, perhaps on different grounds. I think this is no different than discovery orders or other, you know, litigation orders that courts issue that often get superseded by developments. A witness is no longer needed at trial. You know, something changes in the ordinary court. In your position that whatever jurisdiction may or may not exist with respect to the transfer order, is there jurisdiction, appellate jurisdiction for us, as an interpologetary matter, to review independently the transfer from Massachusetts to Vermont? Would that independently grant? Do you mean the 1631 transfer, Judge Nardini? Well, yes, of course, if you consider that you have jurisdiction over this transfer order, then that is... No, I'm sorry, I wasn't clear. If we were to put aside the transfer order, would we independently have jurisdiction to review just... I'm sorry, I think there's two transfer orders and we're using the word, even though there's one to transfer the person, there's one to transfer the case in 1631. Would we have interlocutory jurisdiction, appellate jurisdiction, to review as an interlocutory matter just the 1631 transfer from Massachusetts to Vermont? There would have to be an order that was properly before this court. If it was simply a decision that the district court made on a motion to dismiss, that would not be before this court because denials of motions to dismiss are not interlocutory available. If I may... So that would be hypothetically... I'm sorry, I just have one more question. Would that hypothetically be, I'll make it up, the government moves to re-transfer the case back to Massachusetts or moves to transfer it to a district of X and the court says no, then that 1631 ruling would then be something they would argue about whether there is no ruling here. Correct, that may be... It's not 1631, it just landed and there was. Because it was Massachusetts that issued that order. It was Massachusetts that issued that order, yes. Does the district of Vermont have to accept the transfer? Don't both the transferor and the transferee courts do something? One has to decide that it's transferable, one has to decide that they can accept it? But again, the government didn't appeal anything other than the transfer of Ms. Austert from Louisiana to Vermont and that's what it moved in. Was the government in the same order? The district court actually made preliminary findings about its jurisdiction and then moved to the question of transfer and then moved to the question of bail. And so again, I think... It moved to the question of bail in a separate proceeding, right? So it orders the transfer and then as you point out before, the physical transfer is accomplished and holds remotely a bail hearing, right? But doesn't that mean it believed it was doing two different things? It was ordering the transfer of where she's in the physical custody is going to be based and then it decides whether she gets bail pending the habeas petition. It did do... It did do both of those things, right? It did do both... She could be on bail with primary physical custody held by ICE in Louisiana. It did do two things. Judge Menasci, I agree. The government only appealed the transfer order. Now there's no transfer order in effect. The government could have appealed the bail order. You could... The two things are not the same. But why would the bail pending release affect where the main physical custody of the body is? Because... I don't think that that's... That's that issue here because again, the reasoning behind the transfer order was to enable her to participate in her proceedings in Vermont. And now the question before this court on the transfer order, I want to also note one of the arguments that the government makes against the transfer order is limited only to the transfer order. It's the 1231G argument. And so again, you can see the mootness issue here because if this court were to rule only that 1231G prohibits the transfer orders and says nothing about the other INA jurisdictional bars that are at issue for the bail hearing, the bail order, that's an advisory opinion about a transfer order that is not going to be reversed. I guess there is no effect of reversing the transfer order, but the government says that there is because the primary custody would not be limited to Vermont and the government would not be constrained in where it could. Again, Ms. Ulstrup is released and she is not confined to Vermont. She has freedom of movement. She has certain conditions about notifying the court, but she's not under restrictions of being in the District of Vermont. I do want to address the question of habeas venue and also the INA merit question. On habeas venue, I think the transfer was properly effectuated. Padilla is very clear. Every single district and appellate court to have considered this issue in the context of students being detained by ICE has held that petitioners could file in the District of Consignment at the time they filed and that transfer under 1631 properly effectuates that district court's jurisdiction. I think any contrary argument that the government has made would simply mean that the executive could suspend habeas corpus and access to a habeas court for as long as it deemed someone to be in transit. They couldn't even bring a conditions of confinement claim, which was highly relevant for Ms. Ulstrup in particular because the 24 hours that she was in transit, her counsel was desperately trying to find out her whereabouts. She didn't have her asthma medication on her. Her counsel was very concerned. For that 24 hours, when the government says it's okay if you can have access to a habeas court, it was actually imperative for Ms. Ulstrup to have access to a habeas court. Now on the merits, I want to get to the heart of the issue here, which is that the government contends that it can detain someone to punish her and censor her speech as long as it also seeks to remove her for that speech. And that simply can't be the rule, both under the First Amendment and under the Suspension Clause. It cannot be that Ms. Ulstrup's going to a habeas court to say, I was taken off the street to silence me. This is an ongoing harm. The government could choose to keep me for as long as it wants to keep me quiet, and that is an irreparable harm. My voice is lost to the public sphere, and I have no... The government said that actually if there is a thoughtful claim of detention, it's going to be for long, like in Zadidaz, who could file a habeas claim. So it's only during the period in which it's a reasonable detention pending a removal procedure. But that's not Ms. Ulstrup's claim. Ms. Ulstrup's claim is different than a prolonged detention claim, but nothing in Supreme Court case law, and the Supreme Court has heard multiple detention claims. Jennings, Guzman-Chavez, Priyap, Ortega. It has never said that... The Jennings claim says you can't challenge the decision to detain in the first place because that would end up as a decision to remove. So the question is, is the challenge to detention independent of the challenge to remove? Here the challenge is independent, and the reason it is independent is that Ms. Ulstrup could succeed on her detention claim and her removal proceedings could continue as they do. She is actually scheduled for a master calendar hearing on October 21st. The district judge was very clear when he ordered her release on bail that it was not going to affect her removal proceedings at all. But I do want to get at the claim here. Jennings did not say that you cannot bring a challenge to the decision to detain. It said very clearly we're not rendering a comprehensive opinion on B-9 because neither party actually briefed B-9 before the Jennings court. The government keeps ... ... ... ... ... ... ...    And I want to explain why the logic of Jennings says you can bring this claim. The government's argument is that every time they make a decision to detain, that is simply a discretionary decision. But that is not true. The decision to detain and the decision to remove rest on different standards. The decision to remove is, is this person removable under whatever statutory provision and do we decide to exercise our prosecutorial discussion to seek to remove them? The decision to detain is separate. It is, is this person a flight risk or a danger? And Zibidis and DeMoore made very clear those are the only permissible grounds on which someone can be detained. There is a large class of noncitizens whom the government is pursuing removal proceedings against who it does not detain. Detention pending removal is a collateral process with different standards that has to be separately justified. And that's, if I'm understanding, this is an argument that you can make at least here because your client was detained under 1226A not C. It would be a lot harder argument for you and I suppose a much easier argument for the government if this were a case where the type of or the basis for removal that was asserted would trigger mandatory detention. Would you agree with that? I think it would be a different case,  because there under 1226C the statute says you are categorically a flight risk or a danger. So I think we might be more in Bella Reyes territory, the ninth circuit case where someone might still be subject to detention. You say that you're categorically a flight risk or a danger. You're sort of reading that into it. I mean, you said that the detention needs to be justified but the statute just gives the attorney general and the secretary the discretion to detain them. They need to issue an opinion explaining why, right? But Zydvitas and DeMore have made clear the only permissible purposes of detention are flight risk and danger. And so of the class of non-citizens who are a flight risk and danger, the way the discretion operates is that the attorney general may or may not detain people in that class. And that makes sense. There might be bed space or logistical issues. But Zydvitas says that you can bring a challenge to your detention once the removal is no longer reasonably foreseeable and so therefore the detention is indefinite and no longer serves the purpose of supporting their removal proceedings. But it also means that until that point when it becomes indefinite it can be challenging. Zydvitas says that you can challenge a detention where at that point, again, the claim was that it was no longer in service of removal. None of the Supreme Court cases ever say that you cannot challenge a detention that is unlawful on day one. And I want to explain why Jennings' logic allows for that claim. The government suggests that detention is always an action to remove. But that can't be the case. In Jennings, you had people who at six months of detention said, at this point my detention is unlawful. That was not a conditions claim. It was a claim that we should be released if become unlawfully prolonged. Removal and detention did not magically become decoupled at that point in the removal proceeding. People were still in removal and their claim was at this day, six months in, let's say, our detention is unlawful and the Supreme Court said, yes, you get judicial review of that claim. Here, the claim is that day one, my detention is unlawful, but it is no more tied to the removal claim than a prolonged detention claim. And in fact, here the claim is from day one, the administration, the executive branch, chose to detain me to punish me for and censor my speech going forward. So, like, I tend to government, like, if on day one you decide to detain and remove and you also decide to deny the person who's in detention, that's conditions that define the claim as a matter that happens on day one. But if the reason you're saying that detention is unlawful is because the removal is unlawful, isn't that just a collateral effect of removal proceedings?  Again, Your Honor, because the claim here is even if there is overlap, even if I say the government is trying to detain me to punish me for my speech, there may be overlap. I agree with the claim that they're also trying to remove me. But those claims are independent and arise from separate... In a different way. So, like, you know, there will eventually be a litigation probably in the Fifth Circuit about whether the First Amendment prohibits the removal in this case, right? Let's say there already were precedents that made it clear that this is a permissible removal. This specific ground is permissible. There's no violation of the First Amendment at all. Wouldn't the habeas claim be very easy to resolve because we say, okay, the removal is obviously permissible and well established and therefore the detention and service of the removal is in some fact permissible? I don't think so because, again, detention has to be justified on separate grounds. Someone might be removable, but they may not be detainable pending removal proceedings. It's retaliatory or there's a First Amendment problem. You might just sort of say, well, I'm not at flight risk or something like that, right? I think... the habeas claim is a challenge to the removal. If it were obvious that there was no First Amendment problem with removing somebody on this ground, it would follow that you could detain somebody pending the removal on the same ground. I'm not sure that that would necessarily follow because, again, detention has very limited purposes and it could be that there is a decision that says, despite First Amendment precedent to the contrary, that you can remove people for First Amendment speech but not that you can detain them. In particular, because detention effectuates a specific harm, which is prior restraint. Congress said, you know, when they're removable, Congress has detained them pending their removal proceedings. So the whole idea that you're splitting up everything that the government does when it effectuates your removal is exactly what Congress wanted to predict. Again, I think the First Amendment and the suspension clause, even if we accept that that's what Congress intended to do, and I don't think it is because you can read B-9 the way the Jennings plurality read B-9, but even if that is what Congress intended, the cost of that potential overlap would be denial of a judicial forum to hear a claim of unlawful detention and unlawful censorship and prior restraint. And that simply isn't compatible with the Constitution. Again, your arguments about unlawful censorship and prior restraint, in my hypothetical, where we're already well established that this was a valid basis of removal that did not violate the First Amendment, then it wouldn't be unlawful censorship and prior restraint if everybody would understand that the removal is valid and so therefore detention and removal would be valid. It wouldn't be valid because Ms. Ostrick has a separate substantive due process claim that she's not a flight risk or a danger. Detention pending removal is not, if so facto, valid for everyone who was removable or even found to have, you know... It's not a flight risk or a danger, but that's no longer a First Amendment claim and that's not the claim that you're pressing here, right? Again, I want to be very clear. Ms. Ostrick is pressing the claim, and this is an independent claim, that her detention was for purposes of censorship and a separate substantive due process claim that she is neither a flight risk or a danger and therefore, regardless of whether her removal proceedings can continue, which they are because the district court did nothing to disturb the removal proceedings... It's important to determine that she's not a flight risk or a danger, then what about the administrative remedy question? So she went to an IJ and said, I should be willing to sign bonds because I'm not a flight risk or a danger. The IJ disagrees that she's not appealant to the BIA, so it's like important to determine whether she's a flight risk or a danger and Congress authorized an administrative process for making that determination and releasing her on bond. Why isn't she required to absolve those remedies before pursuing an ABM claim? She's not required to absolve them, but I do also want to note that the government never raised this claim in its papers whatsoever, the administrative exhaustion requirement, so it is waived. I'm curious about it. So why is it required? Yes, I will address that. The reason is that asking the very executive branch that you allege is seeking to weaponize immigration detention to silence you to release you is not an adequate substitute for habeas, and I think Boone at the end makes it very clear. You can't ask the very same government entity, and again, the IJs are... I get that the government was making an argument that since there's a process available, maybe she doesn't need habeas, but what I'm saying now is not that. Why shouldn't she at least have to absolve the administrative remedies before pursuing habeas so you would have both? Because of the futility problem. Again, because if your argument is that on day one I was detained to retaliate against me to censor my speech, and by the way, it's a continuing harm because the executive branch continued to detain her. That is the core of the great writ of habeas corpus, and Boone at the end, the court said, executive branch detention with no judicial intervention whatsoever is exactly... Doesn't that argument mean we should never have any kind of exhaustion when you're pursuing habeas because you're always detained by the executive branch? I don't think... We do have state law that says there is exhaustion requirements for habeas, right? I agree with that, and I don't think that's the case for every instance, and I don't think there's a floodgate problem because we have here a very extraordinary situation where we do have a problem like we saw in NRA versus BULO where you have use of otherwise, you know, law enforcement, appropriate law enforcement authority and processes being used to suppress private speech, and so when the claim is that it is that executive branch using its processes, its immigration enforcement authority, its immigration, you know, the whole removal and detention apparatus of that...  that it's a due process claim that your client is making wouldn't be enough to seek relief in habeas alone? Is that what you're saying? I was going to ask you to address... I'm sure you're familiar with Judge Wilkinson's dissent in Surrey. It's just that the state gets engaged, but why isn't this a floodgate situation? I think this isn't a floodgate situation, again, because the very unique nature of the claim here, which is this isn't ordinary immigration enforcement. The detention was not motivated by seeking to keep someone who was a flight risk or a danger, or even to assess whether she is a flight risk or a danger, because that wasn't the motivation here. And again, as we saw, she was denied bond because the flight risk or the danger is not an issue. Now, if she just had a substantive due process claim, I think that would be a different question, and I know that... She'd have to go to the immigration court. I... Her only claim is that... She said, I'm not a flight risk and I'm not a danger and I shouldn't be detained. And I think that is the practice that normally happens. You routinely see habeas petitions filed, you know, after someone has gone to an IJ. They then appeal to the BIA. And also, I want to note, after they appeal to the BIA, people do file habeas petitions because there's no further review of that denial of bond. If you say, I'm not a flight risk or a danger, you don't go to the... Correct me if my mispronunciation is wrong. If the claims that have been heard and have received some success in habeas court, they're all about unreason... When the detention has become unreasonable, then the habeas court will go forward in the circuit. I think that's correct. I do note also,  that the Supreme Court did hear initial detention claims in DMOR and PREOP. So, again, it depends on the nature of the claim. There's no shortcut to simply saying, categorically, you know, this is the requirement, you know, whether it's an initial detention claim, whether it's a statutory or constitutional argument. You have to look at the nature of the claim and here, the nature of the claim is that the executive branch has detained me for an impermissible reason that violates the First Amendment. I think that would be a violation of the writ of habeas corpus and a violation of Boumediene. I don't think administrative exhaustion is ever required when it would be futile. That's also a part of the case law and administrative procedures in this context. That's correct. The argument is that it would have been futile. I think that is exactly what the habeas court's job is, to assess the motivation behind the detention. Again, this is the claim. The district court made an assessment that she had raised a substantial claim that the executive branch, which includes EOIR, all of the sub-components, again, these are not independent administrative bodies. These are not even Article I courts. These are delegates, attorneys delegated by the Attorney General. The district court made a finding that she had raised substantial claims under the First Amendment and thus, in the due process. I don't know if this is shifting gears a little bit, but let's say you prevail in some way, I don't know, here. What happens going forward? Do we have two parallel tracks? One bubbling up through, I guess, the immigration court in Louisiana and then ultimately subject to review by the Fifth Circuit and then this whole other habeas track coming through Vermont and eventually exposed to our court in some way. Effectively assessing the same thing and this, I think, goes back to the government's argument that, I know they had this one sort of categorical argument that if we're looking at detention that occurs at the commencement of removal proceedings and there's no judicial review, period, but there's also this case-specific argument that the argument that your client has raised against removal and detention is identical.  It's going to have to look at the same people's motives, the same conclusion as to whether it's retaliatory and then the same determination as to whether even if it's retaliatory it violates the First Amendment. How does that work in practice? What happens, is there a race that one place gets final first and then there's issue preclusion as between one or the other? And this I guess gets to maybe the spirit of the government's arguments. Maybe they're right, maybe they're wrong about all the 1252 statutory preclusions of habeas review. That the point of 1252's various provisions are to channel all of these judicial actions before one forum so that they can be resolved without courts coming into clashes. So map this out for me. Are we headed inevitably to a clash and the answer is a well? Maybe and maybe not. And my answer to if we are headed for a clash, that is the price of the suspension clause and the First Amendment guarantees. But I do want to map it out for you. She's actually in the First Circuit potentially. Her proceedings will be in Boston. Her removal proceedings continue as I said. If the district court orders her release on final release of detention pending removal, that means that. She will be released pending removal. Now her removal proceedings will continue and there are multiple arguments being made. She's raised other arguments including that her visa was not  in Boston.  released pending removal. The effect would be because she could then go to  the removal proceedings would have to change to Boston? They already have. The venue was changed. Her removal proceedings are in  She has a master calendar hearing on October 21. Because she was released from detention pending the APS decision? That's correct. There are many tens of  of noncitizens who are not detained. I don't recall if she moved or if it happened automatically. Because she was resident there? Yes. Because she's resident there and the district court said she can return to her home. Where was the NTA filed? The NTA was filed with the Louisiana court. I wasn't aware that it shifted. Change of venue motions are routinely granted when people are released. I can double-check whether she actually moved for it or whether it happened right now. It's all administratively  in the Boston field office. That's correct. Again, like any other removal proceedings initiated against people who are released on bond or never detained in the first place proceed where the people live. If she was granted the transfer order, would that have the effect of allowing the government to move it? They might move to do so. I can't speculate as to what they might do. Might that be an effect? It may not be. If your question is does that have to do with the immigration proceedings that are in, but I want to answer your question. You might get to the stage where there's a PFR before the first circuit. I think that issue preclusion is simply the price we have to pay for having review for unlawful detentions. The PFR is in no way an obstacle    Jennings made that clear. There's multiple reasons for  I think the reason number one is that you may never get to a PFR. She may never be able to  the period of unlawful detention she has to endure. By the time she gets to the PFR she may be released for other reasons. The fact that there may never be a PFR means you do not have a  judicial forum for a detention claim. It may be that the adjudication of the petition is preclusive of issues that arise from her removal, but Congress's attempt to prevent that is unconstitutional. That is what I am saying. I think we don't fall within them. I want to be very clear. I don't think Congress was attempting to take all of the detention claims off the table.  was interested in channeling issues that arise from review of final orders of removal to one process. Again, that would be a review of  not of removal. The fact that there may be some overlap between          issue. It is an issue that arises from the removal. I think Congress was concerned with making sure you could not appeal to the court of appeals and go to the  court to attack one portion of your final order and another portion in the court of  Even if Congress somehow did that, the Constitution wouldn't permit that. Congress simply did not intend to and could not have channeled to a PFR. If it is not an issue pertaining to  final order of  they have no grounds on considering what the detention was based on. Again, the PFR and the  process are designed to address a different question. Are you removable? Do you have any defenses to removal? It is not an administrative process designed to address the loss of your detention. I'm sorry, are you asking if the  court decision would be binding? Again, I think if the issue preclusion is a maybe or maybe not, it depends on the grounds. I do think it could be issue preclusive. Again, the suspension clause in the first amendment requires that result. It can't be that you have no access to a judicial forum for review of something that cannot grant you meaningful relief and a PFR that may never come. Could the issue preclusion work the other way around,  It probably seems unlikely, but let's hypothesize that the  procedure in the first circuit works its way through the first   it's still pending before us. You could see a world, I  where the first circuit beats somebody in the race. Would any preclusion arguably work the other way around? I do want to say finally that this happens all the time. For example, there's currently a challenge to the birth rights citizenship executive order. Those issues are being decided in court. Now, obviously, any decisions of those courts might be issue preclusive if the government chose to issue a notice to appear against any of those children born in the United States because they're not citizens. But that happens.  Supreme Court said that B-9 is an unmistakable super clause that channels all challenges to all the actions of the I.N.S. to one proceeding which is the petition for review. You're saying I.N.S. is wrong about that or is that what Congress wants and it's unconstitutional? No, I'm saying that Justice Alito's  and Jennings said that we can't read arising from removal proceedings to cover such a  of claims that would not be covered by the jurisdictional bars and there's no way to issue preclusives because the question about whether the extension is prolonged or whether you've got kosher food or whatever would not have implications for the removal proceedings. You're saying you can in fact issue questions that would be  when it's ultimately removed proceedings and even if Congress wanted to avoid that they're not allowed to. That is correct. Constitutional avoidance compels that result. Thank you. We're here with Donald. Thank you Your Honor. A few things. First of all on mootness. I think that counsel correctly stated that technically we could move her immigration proceedings to Louisiana. The only reason they were moved to Boston is because that's where she lives and because of the habeas proceeding in Vermont and the transfer of her body to Vermont for that to   she was still released on bail you would say her primary residence is in Louisiana and therefore that's where the removal proceedings should be? We think that reversing the transfer order especially on habeas jurisdiction grounds would make the government able to re-detain her in Louisiana. You're saying especially on habeas jurisdiction grounds but you're saying the reasoning would have this effect. But the point that opposing counsel was making is that you have to talk about the relief that's awarded. So apart from the reasoning if we just reverse the order itself transferring her from Louisiana to Vermont what effect would that have? Well your honor this order is a little bit broader than I think counsel was getting at. There was a lot that happened in this district court order. One of the things was that it actually accepted the transfer from Massachusetts to Vermont. I'm not aware of that being a thing. My impression is that 1631 is that a transfer court sends it and it lands. It's not like 1292B where a district court certifies it up and we have to certify it down in joint hands. My understanding is that you have to    thing as accepting or not accepting a 1631 transfer and if so what is your authority? Well your honor in the habeas context this is a different issue because the district court had to go through and figure out whether there was habeas jurisdiction. That's a question of whether he should have granted a motion to  I'm talking about something different which is you saying he had to accept the 1631 transfer. Maybe this is just a  imprecision. But my understanding is 1631 is a different action. Or if he wants to send it back to  he issues his own 1631 order and says thanks very much but return to sender. I don't want it. It's yours now. This happens. And I'm not seeing either one of those things happening. He didn't dismiss it and you didn't appeal from a dismissal because I don't think you can. And there is no order saying return to sender thanks but no thanks. That didn't happen either. So I'm not sure. Maybe you can clarify what you mean by the acceptance and what the acceptance is that would make it appealable as an interlocutory matter. In the district court's order, the district court did a lot of things including saying that it was proper to bring the habeas fiction to  And doing so, conclusively resolved that issue. It implicated an important feature of federal sovereignty which deals with Calgary. So I guess the question is whether that is an order, a collateral order or just a reasoning. This report does say because this petition could have been brought to this court and the records report said the equity is in favor of transferring the petition to this court. Is that a final order because that was like a decision to accept the transfer or is that just reasoning by which it proceeded to do other things? In this context, we think you can see it both ways but we think it may actually be something that conclusively resolved the   It may just be a collateral order. How is it not reviewable? Let's say this judge grants habeas relief down the road. You say hey, this thing was improperly before the court. We look and say you're right. You're saying if that happens, let's say today we rule against you. Let's say in the future the Vermont habeas court rules against you. Are you telling us you can't make that argument in the future? We can argue that the court lacks jurisdiction. Is it effectively unreviewable? I think the answer is it's eminently reviewable in the future. You can always come back and complain about it later and then the court says you win.  point there would have been entire habeas proceedings going on in that court. This is what happens every time someone loses a 12B6 motion and then they lose their summary judgment motion and then they have to go to trial. I didn't get that  I think we can                         I think there is one footnote raising a  clause issue with D9 so I don't think the court needs to reach those and whether this would be unconstitutional suspension. On habeas venue, there is no But do you think that the jurisdictions are unconstitutional? No, Your  We do not. As to habeas venue There could be a preclusive effect from a decision on the detention proceedings on the eventual review of the proceedings? Your Honor, we do not think that these proceedings would be preclusive or that they could be at all. But this is one of the reasons Your Honor, we think that the issue here is that Congress created the system that we are not supposed to have these two parallel proceedings and what the district court's order does here is functionally to create these two parallel proceedings and raise potential issues. Your Honor, but if it had it, then it would be considered as  preclusive issue? Yes, it certainly could be. On habeas venue, there is no suspension here. I know petitioner was talking about how not being able to or how because of where we were transferring her that she was not able to file a petition at one time. The government gave her a notice to appear and she was aware of where she could file it and would have been able to file it   Your Honor, the rule of having to name your custodian and also having to file in your district of confinement, these rules are not really about trying to prevent they are not about denying you a forum. If petitioner would have been able to go to district of   and try to bring a habeas claim there, that would be an entirely different situation. Your Honor, we think that the correct person is the ultimate custodian who was the warden of the facility. No, Your  we think that the ultimate custodian       left Massachusetts, her  was the superintendent of the facility. If that is not right, it would be the warden of the facility that she was going to. But if the custodian is not known, it is not required to be named. Your Honor, it is correct under 2242 that the custodian has to be known. I think that custodian has to be knowable. Thank you.